IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT JABLONSKY, MD,           )<br>                                                         )<br>             Plaintiff,                         )<br>                                                         )<br>     v.                                               )<br>                                                         )<br>SIERRA KINGS HEALTH CARE     )<br>DISTRICT, a California public Hospital )<br>District dba SIERRA KINGS DISTRICT )<br>HOSPITAL, CARROLL FRIEND,     )<br>KATHLEEN OMACHI, and BARRY )<br>WARMERDAM,                               )<br>                                                         )<br>             Defendants.                    )<br>_____) | CV F 06-1299  AWI LJO<br><br>ORDER ON DEFENDANT<br>SIERRA KINGS<br>HEALTHCARE DISTRICT'S<br>MOTION FOR SUMMARY<br>JUDGMENT<br><br>Doc. # 67 |

    This is a civil rights action pursuant to 42 U.S.C., section 1983 brought by plaintiff Dr. Robert Jablonsky, MD ("Plaintiff") against defendants Sierra Kings Healthcare District, et al. ("Defendants").  In an order filed March 2, 2007, the court dismissed all claims set forth in the original complaint, which alleged damages arising from wrongful revocation of hospital privileges.  Doc. # 18.  Dismissal was granted on the ground the prior adjudication of those claims in the California tribunal precludes the re-litigation of those claims in this court. Takahashi v. Bd. of Trustees of Livingston Union Sch. Dist., 783 F.2d 848, 850 (9th Cir. 1986). Plaintiff's First Amended Complaint ("FAC") was filed on March 5, 2007 and alleges damages arising solely out of the delay of formal administrative proceedings that were requested in 1997


and not completed until May 2, 2006, that resulted in the revocation of Plaintiff's medical staff privileges. The court denied Defendant's motion to dismiss the FAC on the ground Plaintiff's claims could have been, but were not decided in the administrative proceeding. Now before the court is Defendant's motion for summary judgment as to all Plaintiff's claims set forth in the FAC. For the reasons that follow, Defendant's motion will be denied without prejudice as procedurally improper. The parties will be ordered to file additional pleadings.

## PROCEDURAL HISTORY AND FACTUAL BACKGROUND

Plaintiff was a member if the medical staff of Sierra Kings District Hospital ("Hospital"). On or about September 16, 1997, Hospital, through its Medical Executive Committee ("MEC") notified Plaintiff of a proposed action to summarily revoke Plaintiff's privileges to practice medicine at Hospital. The September 16 notice also summarily suspended Plaintiff's admitting privileges at Hospital. On December 16, 1997, Hospital provided notice of a proposed action to make the revocation of hospital privileges permanent. Defendant and/or Hospital by-laws provide for a formal hearing and appeal process (hereinafter the "administrative process") to address disputes arising from medical staff disciplinary actions. The by-laws provide that a hearing on claims arising from revocation of medical staff privileges or other disciplinary actions is to commence within 60 days of notice of demand for such hearing. Plaintiff provided notice of demand for a hearing on November 14, 1997. The hearing on Plaintiff's claims commenced on June 15, 2004, and the administrative process did not produce final adjudication of Plaintiff's claims until May 23, 2006.

The complaint in this case was filed on September 18, 2006. On March 2, 2007, the court granted Defendant's motion to dismiss the complaint in its entirety. Leave to amend was granted. Plaintiff's complaint was dismissed because the court determined that the court was precluded from deciding those issues raised in the complaint – sufficiency of the evidence to support the decision to deny medical staff privileges and the fairness of the proceedings, including consideration of any unfairness arising from the passage of time – because those issues

were decided by the hearing and appeal mechanism provided by Hospital.  In dismissing the complaint with leave to amend, the court left open the *possibility* that Plaintiff could state a claim for violation of Procedural Due Process under the Fourteenth Amendment based solely on the delay in proceedings separate and apart from any prejudicial effect that delay may have had on the substance of Hospital's review under their administrative procedures.

Plaintiff's FAC, which was filed on March 5, 2007, attempts to state a claim pursuant to 42 U.S.C. § 1983 based on the allegation that delays in the institution and completion of the process of administrative adjudication of his claims amount to a violation of his procedural Due Process rights under the Fourteenth Amendment.  The FAC, as well as the original complaint, listed individuals that were involved in the administrative review proceedings as defendants.  On June 28, 2007, the parties stipulated to the dismissal of all individual defendants.  As of the court's order of July 2, 2007, adopting the stipulation, Sierra Kings Health Care District dba Sierra Kings District Hospital is the only defendant in this action.

On July 30, 2007, the court denied Defendant's motion to dismiss the FAC.  In denying the motion to dismiss, the court determined that Plaintiff's claim of violation of procedural Due Process rights arising solely out of the delay in the administrative adjudication of Plaintiff's claims was not within the scope of issues that could have been administratively adjudicated or addressed in a mandamus proceeding before in the state court.  Consequently the court determined Plaintiff is not precluded from raising his claim of constitutional due process violation, assuming that such a claim can be stated.  The court expressly left open the question of whether Plaintiff could, in theory, state a valid claim for violation of procedural due process on the ground of delay where the substantive conclusion reached by the process has been conclusively found to not be prejudiced by the delay.  The court also left open the question of whether, if such a claim for procedural due process violation is possible, Plaintiff's FAC adequately states such a claim.

On December 10, 2008, the parties stipulated to an extension of time for non-expert

discovery and stipulated to continuance of the trial date.  Pursuant to an order of the court dated March 9, 2009, non-expert discovery was extended from February 2, 2009, to April 6, 2009.  The instant motion for summary judgment was filed on June 1, 2009.

## UNDISPUTED MATERIAL FACTS

On or about February 11, 2009, – that is, during period of time when non-expert discovery was extended – Defendant served Plaintiff with sixty-eight Requests for Admission.  In aggregate, the Requests for Admission seek to establish a factual basis for Defendant's fundamental contention that the delays in the process of adjudication of Plaintiff's claims in the administrative forum was the result of Plaintiff's actions and not the result of delay by Defendant.  Plaintiff did not respond to the requests for admission.  Defendant asserts that, where a party fails to answer a request for admission within 30 days of the date the request for admission was propounded, the fact or facts that are the subject of the requests for admission are deemed admitted.  Jackson v. Riley Stoker Corp., 57 F.R.D. 120, 121 (1972).  Defendant contends that, as a consequence of his failure to answer the requests for admission, the facts propounded as requests for admission are deemed proven.

Plaintiff alleges he was not served the Requests for Admission or that, if his law firm was served, he did not receive notice of the Requests for Admission in time to make a timely reply.  The court has reviewed Defendant's Request for Admissions, which is submitted as Exhibit 2 in support of Defendant's motion for summary judgment.  Defendant's Request for Admissions seeks to authenticate certain documents by admission and seeks Plaintiff's conformation as to Plaintiff's actions during certain periods of time during the pendency of the administrative review process.  The Request for Admissions concludes by requesting Plaintiff's admission that the delays that were evident in the administrative review procedure were entirely the result of Plaintiff's actions or inaction.

For reasons that will be discussed below, Defendant's Request for Admissions has little or no relevance to the instant motion for summary judgment.  The court will disregard

Defendant's Requests for Admission for purposes of consideration of the instant motion for summary judgment.

In the discussion that follows, the court will refer to three documents provided by Defendant as exhibits to Document # 73, Defendant's Notice of Lodgement in Support of Motion for Summary Judgment. The documents the court will reference are Exhibits 3 and 4 of Doc. # 74 and Exhibit 7 of Doc. # 75. For purposes of this discussion the court takes judicial notice of the documents strictly for purposes of proving the existence of proceedings that were conducted in September and October of 1997. The court will otherwise not rely on Defendant's proffered undisputed material facts and therefore need not address Plaintiff's objections thereto.

## LEGAL STANDARD

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Poller v. Columbia Broadcast System, 368 U.S. 464, 467 (1962); Jung v. FMC Corp., 755 F.2d 708, 710 (9th Cir. 1985); Loehr v. Ventura County Community College Dist., 743 F.2d 1310, 1313 (9th Cir. 1984).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

Although the party moving for summary judgment always has the initial responsibility of informing the court of the basis for its motion, the nature of the responsibility varies "depending on whether the legal issues are ones on which the movant or the non-movant would bear the burden of proof at trial." Cecala v. Newman, 532 F.Supp.2d 1118, 1132-1133 (D. Ariz. 2007). A party that does not have the ultimate burden of persuasion at trial – usually but not always the defendant – "has both the initial burden of production and the ultimate burden of persuasion on

the motion for summary judgment." Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc., 210 F.3d 1099, 1102 (9th Cir. 2000). "In order to carry its burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." Id.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); First Nat'l Bank of Arizona v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968); Ruffin v. County of Los Angeles, 607 F.2d 1276, 1280 (9th Cir. 1979). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the mere allegations or denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Rule 56(e); Matsushita, 475 U.S. at 586 n.11; First Nat'l Bank, 391 U.S. at 289; Strong v. France, 474 F.2d 747, 749 (9th Cir. 1973). The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Anderson, 477 U.S. 248-49; Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

## DISCUSSION

On March 3, 2007, the court granted Defendant's motion to dismiss the complaint in its entirety on the ground the substantive claims alleged by Plaintiff were precluded by final adjudication of those same claims through the administrative process. The court also ruled that, to the extent it was Plaintiff's intent to allege a claim for constitutional deprivation based solely on the delay in proceedings – separate and apart from any tendency of the delay to render the

administrative proceedings unfair – such claims were also dismissed as inadequately pled. Doc. # 18 at 11. On March 30, 2007, Defendants moved to dismiss the FAC on the very narrow ground that Plaintiff's claim of constitutional injury as a result of delay was precluded because he could have litigated his claim for delay before the California court in a mandamus action. In its order of July 30, 2007 this court denied Defendant's motion and opined that, based on the very limited arguments before it, the *possibility* that Plaintiff could allege a viable claim for relief on the sole basis of delay in the administrative proceedings could not be ruled out. What the court should, but may not, have made clear is that it was not the court's intent to suggest that such a claim *could definitely* be successfully alleged under the facts of this case or that the FAC adequately alleged such a claim.

Unfortunately, the court's comments regarding the *possibility* that a claim could be based solely on delay, and the comment that Plaintiff would have to prove Defendant caused the delay in order to prevail, may have caused the parties to focus on delay and to not examine the contours of Plaintiff's Fourteenth Amendment rights. As will be discussed *infra* it appears from the pleadings in this case that, regardless of which party was responsible for any delays that may have occurred in the administrative process, the FAC falls short of stating a legal basis for relief. The instant motion for summary judgment is grounded almost entirely on Defendant's allegation that the delays in the administrative process were entirely Plaintiff's fault or responsibility. What is missing is any discussion of whether the administrative process that was delayed was constitutionally mandated in light of proceedings that apparently occurred within a month of the summary suspension of Plaintiff's medical staff privileges.

The court is not willing to determine the constitutional implications of a delay in the administrative proceeding where it is not clear to the court that the proceeding that was delayed has a constitutional dimension. Analytically, the court must first address precisely what process was due Plaintiff under the Due Process Clause of the Fourteenth Amendment under the facts of the case. To determine if the delay that is the subject of the FAC implicates a constitutionally

7

protected interest, the court must review the process that was afforded Plaintiff, both immediately following his summary suspension and during the administrative process that followed in light of relevant case authority. If, and only if, the delay that is the subject of the FAC intrudes on a constitutionally protected interest is it appropriate that the court give consideration to how responsibility for the delay should be allocated.

Because the court is concerned that its comments in prior rulings may have caused the parties to presume there was no need to discuss what the court considers to be the indispensable issue of whether the complained-of delay intruded on a constitutionally protected interest, the court is hesitant to make a ruling based solely on its analysis of that issue without benefit of briefing from the parties. At the same time, the court is of the opinion the parties might benefit from the court's preliminary analysis and that both the court and the parties may benefit by directing future briefing at least in part to those facets of the issue that are particularly problematic. What follows is the court's preliminary analysis of the issues raised by Defendant's motion for summary judgment. The court will set a schedule for further briefing to allow the parties to respond.

## I. Fourteenth Amendment Due Process Requirements

The FAC alleges a single claim for relief under 42 U.S.C. § 1983 for violation of Plaintiff's Due Process rights under the Fourteenth Amendment. "To state a claim for relief in an action brought under § 1983, [Plaintiff] must establish that [it was] deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law. Like the state-action requirement of the Fourteenth Amendment, the under-color-of-state-law element of § 1983 excludes from its reach ""merely private conduct, no matter how discriminatory or wrongful."" Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50 (1999) (internal citations omitted). As neither party has raised any issue as to these threshold matters, the court will first infer from the allegations set forth in the FAC and from Defendant's silence on the issue that Defendant Sierra Kings Hospital District is organized under the laws of
8

the State of California such that its actions with respect to Plaintiff are state actions.  Second, the court infers from the existence of by-laws that address the rights of physicians at Sierra Kings District Hospital with regard to maintenance of their medical staff privileges that such privileges constitute a property interest protected by the Fourteenth Amendment.  See Darlak v. Bobear, 814 F.2d 1055 1061-1062 (5th Cir. 1987) (inferring the existence of a property interest in medical staff privileges where hearing rights for proposed suspension of such privileges are specified by hospital regulations).

"The Due Process Clause provides that certain substantive rights – life, liberty, and property – cannot be deprived except pursuant to constitutionally adequate procedures." Laudermill v. Cleveland Bd. Of Educ., 470 U.S. 532, 541 (1985).  Having inferred that Plaintiff has a property interest in the continuation of his medical staff privileges, and having inferred that Defendant's decision to summarily suspend those privileges amounts to state action, the court finds Defendant's summary suspension of Plaintiff's medical staff privileges is subject to Procedural Due Process protection.

"Once it is determined that the Due Process Clause applies, 'the question remains what process is due.' [Citation.]" Id. at 541 (quoting Morrissey v. Brewer, 408 U.S. 471, 481 (1972)). Generally, procedural due process requires that there be notice and "'some kind of hearing' prior to the discharge of an employee who has a constitutionally protected property interest in his employment."  Laudermill, 470 U.S. at 542 (quoting Board of Regents v. Roth, 408 U.S. 564, 569-570 (1972)).  However, "due process is flexible and calls for such procedural protections as the particular situation demands." Morrissey, 408 U.S. at 481.  In the context of Plaintiff's claims for violation of his rights under the Due Process Clause, two issues present.  The first question is, in view of the summary nature of the suspension of Plaintiff's medical staff privileges, was Plaintiff entitled to due process protection before the suspension of the privileges?  The second issue is, if post-deprivation proceedings could suffice for Fourteenth Amendment Due Process purposes, precisely what elements of due process protection were constitutionally required, and

when were they required, in the context of summary suspension of medical staff privileges?

### A. Post-Deprivation Proceedings May Satisfy Due Process Requirements

The Supreme Court has recognized on many occasions that "where a State must act quickly, or where it would be impractical to provide predeprivation process, postdeprivation process satisfies the requirements of the Due Process Clause." Gilbert v. Homar, 520 U.S. 924, 930 (1997). The parties in this action have not based any claims or arguments on the issue of whether Plaintiff was entitled under Fourteenth Amendment Procedural Due Process to pre-deprivation proceedings or whether post-deprivation proceedings would suffice. While it is arguable that Plaintiff has waived any claim that he was entitled to a pre-deprivation hearing, the court is of the opinion that the inquiry into the contours of Plaintiff's entitlement under Fourteenth Amendment Due Process rights requires at least limited inquiry into the issue of whether summary suspension of medical staff privileges can be undertaken without offending Fourteenth Amendment Due Process protections.

Authority appears sparse in this circuit for the proposition that post-deprivation proceedings are sufficient to satisfy Fourteenth Amendment Due Process requirements in the context of summary suspension of medical staff privileges. California Business And Professions Code § 809.5 recognizes the state may need to act quickly to prevent patient harm and so provides that a duly constituted peer review body may impose summary suspension or restriction of clinical privileges "where the failure to take that action may result in an imminent danger to the health of any individual." Id. Under California case authority, the question of whether due process requires pre-deprivation notice and opportunity to be heard turns on the whether the purpose of the action is to avoid imminent danger to the health of any individual. See Sahlolbei v. Providence Healthcare, Inc., 112 Cal.App.4th 1137, 1148-1149 (4th Dist. 2004) (observing that the procedure set forth in Cal. Bus. & Prof. Code § 809.5 for summary suspension of medical staff privileges where the threat of patient harm is imminent is the exception to the general rule set forth in sections 809.1 - 809.4 that require pre-deprivation notice and hearing).

Or, as another California court put it:

> To be adequate, a[n] [administrative] remedy must afford the individual fair procedure rights.  However, it must be remembered that license suspension, revocation or other similar disciplinary proceedings involving licensees are not for the purpose of punishment but primarily to protect the public served by the licensee employed by a hospital.  Thus, so long as a fair hearing is provided, a hospital should not be hampered by formalities not required by its bylaws nor by due process considerations in disciplining or suspending those who do not meet its professional standards.   The concept of "fair procedure" does not require rigid adherence to any particular procedure, to bylaws, or timetables.  At minimum, however, fair procedure requires adequate notice of the administrative action proposed or taken by the group or institution and a reasonable opportunity to be heard.  The fact that a suspension is imposed summarily does not in itself violate these fair procedure rights.

Bollengier v. Doctors Medical Center, 222 Cal.App.3d 1115, 1128-1129 (5th Dist. 1990)(internal citations omitted).

Although the notice from the Medical Executive Committee dated September 16, 1997, informing Plaintiff that his medical staff privileges were summarily suspended does not specifically invoke section 809.5 as authority, the notice does specify that the action was taken in consideration "of the substantial likelihood of significant impairment of patient safety due to [Plaintiff's] conduct and the breakdown of communication between [Plaintiff] and hospital staff . . . ."  Further, Plaintiff does not allege that the concern underlying the summary suspension of his medical staff privileges was anything other than for patient safety.

In view of the foregoing, and in the absence of any argument by Plaintiff that summary suspension was, in and of itself, taken in violation of his due process rights, the court preliminarily concludes the action by the MEC appears to fall within the scope of summary actions authorized by section 809.5 and, pursuant to Gilbert and relevant state court authority, falls within the category of state actions where the right to pre-deprivation notice and opportunity to be heard is displaced by the need of the state to act quickly to prevent harm.

### B. The Requirement s of Due Process in the Context of Suspension of Privileges

The next issue is what sort of post-deprivation hearing is required by the Fourteenth Amendment Due Process Clause where, as here, the property interest at stake is medical staff

11

privileges.  It is well established that due process requirements are not fixed but are determined by consideration of the context in which the interest arises.  See Mathews v. Eldridge, 424 U.S. 319, 334 (1976) (due process "is not a technical conception with a fixed content unrelated to time place and circumstance").  Generally, the requirements of due process are derived from the consideration of three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedure requirement would entail."  Id. at 335.

It is also well settled that what is *not* determinative of due process requirements in a given context is the procedural requirements of the statute or administrative procedure that defines or gives rise to the right or private interest.  "The right to due process 'is conferred, not by legislative grace, but by constitutional guarantee.  While the legislature may elect not to confer a property interest in [public] employment, it may not constitutionally authorize the deprivation of such an interest, once conferred, without appropriate procedural safeguards.' [Citation.]"  Loudermill, 470 U.S. at 541 (quoting Arnett v. Kennedy, 416 U.S. 134, 167 (1974)).  "In short, once it is determined that the Due Process Clause applies, 'the question remains what process is due.' [Citation.] The answer to that question is not to be found in the [state] statute."  Loudermill, 470 U.S. at 541.

This holding in Loudermill means that the contours of Plaintiff's rights under the Fourteenth Amendment Due Process Clause are not determined by either the procedure described by Defendant's bylaws or by the procedures described by California Business and Professions Code §§ 809.1 et seq.  Thus, to the extent Plaintiff seeks to support his claim of infringement of his rights under the Due Process Clause, merely pointing out that Defendant did not meet the timetable requirements of either Defendant's own bylaws or the requirements of sections 809.1 et seq. is not sufficient to state a claim.  See Loudermill, 470 U.S. at 547 ("The chronology of the

12

proceedings set out in the complaint, coupled with the assertion that nine months is too long to wait, does not state a claim of a constitutional deprivation"). Plaintiff must be able to demonstrate that, based on consideration of the factors set forth in Mathews, the delay he experienced amounts to a constitutional deprivation.

The factual context of the decision in Laudermill, along with the more subtle aspects of its holdings give rise to an ambiguity in the holding that the court will briefly explore and then commit to the parties for further briefing. In Laudermill, the plaintiff, a public school security guard who was fired for dishonesty in filling out his employment application, "was not afforded an opportunity [pre-termination] to respond to the charge of dishonesty or to challenge his dismissal." 470 U.S. at 535. What was made available to the plaintiff in Laudermill was a post-deprivation appeals process that, while procedurally comprehensive, was not completed until some nine months after the plaintiff's termination. See id. at 547 and n.11 (explaining timetable and process of adjudication and appeal).

The Laudermill Court was careful to explain that its holding that the state could not deprive an employee of a job in which the employee has a property interest without at least notice and an opportunity to respond to the charges prompting the dismissal rested "in part on the provisions in [state] law for a full post-termination hearing." Id. at 546. The fact the Laudermill Court rested its holding at least in part on the fact that state law provided a procedure that allowed for a full evidentiary proceeding and appeals process has two implications for this court's consideration of the case at bar. First, the holding in Laudermill implies that where a court is called upon to assess the constitutional adequacy of an administrative process, the starting point is not the end of the process and how long it took to get there, it is the beginning of the process and what procedures were in place at the beginning to help assure that the plaintiff would not suffer erroneous deprivation of the property interest. Second, the Laudermill Court's holding implies that when a court considers the Mathews factors in making its determination of whether there was a due process violation, the court must consider those factors in light of the

entirety of the administrative process, not just the adjudicatory or appeals portion of it.  What remains ambiguous as a result of the holding in Laudermill is at what point the requirements of the Due Process Clause are satisfied by proceedings that either precede or immediately follow the deprivation irrespective of whether more elaborate proceedings are provided later.

Unfortunately, the parties' nearly exclusive focus on the delay in the completion of the administrative process has resulted in pleadings that lack any allegation or discussion of the process was provided to Plaintiff, either by design or by happenstance, at the time of or immediately after the summary suspension.  For purposes of the present discussion, the court will rely on its review of the information provided in Defendant's Exhibits in support of its motion for summary judgment.  It appears that for purposes of this preliminary discussion the information that the court can glean from the documents provided is sufficient to allow the court to make fairly accurate presumption about the process was provided initially.  The court will leave it to the parties to dispute, modify or add to the factual basis of the motion for summary judgment or opposition thereto.

When the court considers what process is due in a particular context, the starting point is the general rule that "[t]he fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.' [Citation.]" Mathews, 424 U.S. at 333 (quoting Armstrong v. Manzo, 380 U.S. 545, 552 (1965)).  As practical matter, it is sometimes both easier and more informative to note what courts have held the Due Process Clause of the Fourteenth Amendment does *not* specifically require.  Again, authority from this circuit appears sparse where violation of due process is alleged in the context of summary suspension of medical staff privileges.  A case from the Sixth Circuit Court of Appeals provides the most comprehensive examination this court has been able to find.

In Yashon v. Hunt, 825 F.2d 1016 (6th Cir. 1987), the appellate court addressed the due process claims of a physician who was not reappointed to the medical staff following charges of substandard patient care.  The plaintiff in Yashon alleged six separate instances of violation of

14

his due process rights. Pertinent to this action, the plaintiff in <u>Yashon</u> alleged violation of his due process rights arising specifically from denial of, or interference with, the right to call witnesses, the right to attorney representation and the right to pre-hearing discovery.  <u>Id.</u> at 1017 - 1018. The court in <u>Yashon</u> held that the right to call witness, the right to attorney representation, and the right to pre-hearing discovery were not required by the Due Process Clause of the Fourteenth Amendment.  Although  authority from this circuit that completely approves or disapproves the holding in <u>Yashon</u> appears lacking, the court notes that at least one district court has cited <u>Yashon</u> with approval for the proposition that there is no constitutional right to representation of counsel at an administrative hearing.  See <u>Coronado v. City & County of San Francisco</u>, 1998 WL 410889 (N.D. Cal. 1998) at *2.

**II. The Court Finds Proceedings Provided Immediately Post-Summary Suspension May Have Satisfied Due Process Requirements**

As noted, the starting point for the court's analysis of whether there is any material issue of fact as to whether Plaintiff's rights under the Due Process Clause were violated is what process was provided at, and immediately following the summary suspension of Plaintiff's medical staff privileges.  Plaintiff received preliminary notice of summary suspension in a memo from the Medical Executive Committee ("MEC") dated September 16, 1997 (the "September 16 Memo").  Exh. # 3 to Defendant's Exhibits in Support of Motion for Summary Judgment, filed under seal at Doc. # 74.[1]  The September 16 Memo noticed a meeting of the MEC, which Plaintiff was invited to attend and "discuss this matter."  The September 16 Memo stated the reason for the summary suspension in general terms and referenced a "Statement of Concern" which is not before the court, but the court presumes set forth the allegations against Plaintiff in more detail.  According to the records of proceedings of the MEC, Plaintiff appeared at a meeting on September 23, 1997, where he requested a continuation of the proceedings to September 30,

---

[1] Defendant's notice of lodgment of exhibits in support of their motion for summary judgment is filed under seal at Doc. # 73.  Hereinafter, any documents listed as exhibits refers to documents listed in Doc. # 73 and filed under seal at either Doc. # 74 or Doc. # 75.

1997, in order to have time to review information provided by Defendant regarding the allegations against him. Exh. 4, Doc. # 74. The minutes of the September 30, 1997, meeting of the MEC reflect a dialogue between Plaintiff and the committee members. Exh. #5, Doc. # 74. Significantly, the minutes of the September 30 meeting state that Plaintiff distributed a written response to the charges alleged against him and gave oral arguments that disputed at least certain specific charges. Plaintiff's written response to the charges against him is dated October 2, 1997, and is presented at Exh. # 7, Doc. # 75.

The materials noted above show that the administrative process available to Plaintiff whin the first thirty days after summary suspension of Plaintiff's medical staff privileges offered Plaintiff notice and the opportunity to respond, both in person and in writing, to both the general and specific charges against Plaintiff. In light of Laudermill's holding that basic notice and opportunity to respond meaningfully to charges is sufficient where more extensive post-deprivation procedures are provided and given the elements of formality that are not constitutionally mandated by the Due Process Clause of the Fourteenth Amendment as listed in Yashon, the court finds that Plaintiff may well have been afforded the process that was due immediately post-deprivation.

As to timing, the court has already concluded that in the case of summary suspension of medical staff privileges Fourteenth Amendment Due Process requirements can be met by post-deprivation administrative proceedings so long as notice and opportunity to be heard are promptly provided. The court therefore concludes that the administrative process that was afforded Plaintiff within the thirty days following the summary suspension of his medical staff privileges may have been adequate, both with respect to scope and timing, to satisfy the requirements of due process.

**III. Defendant's Motion for Summary Judgment is Procedurally Improper**

While Laudermill is authority for the proposition that a delay in post-termination proceedings can amount to a constitutional violation, 470 U.S. at 547, a complaint that merely

sets forth the chronology of the proceedings along with the conclusory assertion that the delay in proceedings is too long is insufficient to state a claim of constitutional deprivation.  Id.  The court has carefully examined Plaintiff's FAC and finds that it is doubtful that the FAC pleads a legal basis for relief.  The only connection between the factual basis of Plaintiff's claim of infringement – the length of time between the request for hearing and the hearing – is Plaintiff's contention that California statutory law requires a more timely process.  As previously discussed, California statute does not define the contours of entitlement under the Due Process Clause.  Id. at 541.  To successfully plead a claim for relief for infringement of Due Process under the Fourteenth Amendment, the plaintiff must allege what process is required and when, what process was provided and when, and must at least allege that the difference between the two amounts to a constitutional deprivation.

In attacking Plaintiff's claim of constitutional deprivation by arguing that the alleged injury – delay in the administrative process and delay in the final adjudication – was Plaintiff's fault, Defendant has put the put the cart before the horse. As previously noted, in order to carry its burden of production in a summary judgment motion, Defendant "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial."  Nissan Fire & Marine Ins. Co., Ltd., 210 F.3d at 1102.  Defendant cannot carry this burden unless it can show that the element being negated or attacked is essential.  Put more bluntly, the court has no reason to decide who is responsible for any delay in proceedings until and unless it is demonstrated that the proceedings that were delayed are constitutionally mandated and that some timeliness requirement that was not met constitutes a constitutionally protected part of the process.

**IV. Alternative Grounds for Relief or Summary Judgment**

Defendant moves for summary judgment on the alternative theory the court "should give preclusive effect to the Final Administrative Decision because [Plaintiff] did not exhaust his

judicial remedies before filing this Federal Tort Action." So far as the court can discern from Plaintiff's FAC, this is a civil rights action, not a federal tort action. If Plaintiff can state a claim for relief under 42 U.S.C. § 1983, then that claim will be based on the requirements of the Due Process Clause of the Fourteenth Amendment, not on California Business and Professions Code §§ 809.1 et seq. The court is of the opinion it has already ruled on Defendant's claim preclusion theory. So far as the court is concerned at this juncture, Plaintiff's ability to state a claim for a constitutional violation turns to a significant extent on what process was afforded to Plaintiff before he formally requested his hearing pursuant to section 809.1 et seq. As the court previously ruled, the administrative hearing body did not and could not have contemplated the constitutional adequacy of their own processes, whether they were delayed or not. If Defendant is contending that Plaintiff's claims are precluded on grounds that are different than have already been decided by the court, Defendant will be required to differentiate its assertion of that theory from any prior ruling of the court on similar grounds.

## CONCLUSION AND ORDER

Because it is the Plaintiff's burden in the first instance to adequately plead facts and law that would entitle him to relief, it is the court's opinion that Plaintiff should be tasked initially to show how, in light of the issues raised here, the pleadings set forth in the FAC are sufficient to entitle Plaintiff to relief. Defendant will then have an opportunity to oppose and Plaintiff to reply. Obviously, the court could proceed by some other route and the court is amenable to alternative approaches that the parties may stipulate to. Parties are cautioned, however, that if the parties agree that Plaintiff may voluntarily dismiss the FAC, the court will not be inclined to grant leave to amend beyond leave that will be granted to file a second amended complaint.

THEREFORE, it is hereby ORDERED that:

1. Plaintiff is hereby ordered to show cause why, in light of the discussion presented here, Plaintiff's First Amended Complaint should not be dismissed for failure to state a claim

upon which relief can be granted.

2. Plaintiff's response to the court's order to show cause shall be filed and served not later than twenty-one (21) days from the date of service of this order.  Alternatively, any request for voluntary dismissal with leave to amend shall be filed and served, along with a proposed second amended complaint, not later than twenty-one (21) days from the date of service of this order.

3. Defendant may file and serve an opposition to Plaintiff's response to the order to show cause not later than fourteen (14) days from the date of filing and service of Plaintiff's response.

4. Plaintiff may file and serve a reply not later than seven (7) days from the date of service of Defendant's opposition.

5. Any stipulation or request to proceed by means other than as specified in this order shall be filed and served not less than ten (10) days from the date of service of this order.

IT IS SO ORDERED.

Dated:   September 23, 2009              /s/ Anthony W. Ishii
                                         CHIEF UNITED STATES DISTRICT JUDGE