1
2
3
4
5
6

**IN THE UNITED STATES DISTRICT COURT FOR THE**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **ROBERT JABLONSKI, MD.** ) | CV **F 06-1299 AWI GSA** |
| ) | |
| **Plaintiff,** ) | **MEMORANDUM OPINION** |
| ) | **AND ORDER GRANTING** |
| ) | **PLAINTIFF'S MOTION TO** |
| **v.** ) | **VOID JUDGMENT PURSUANT** |
| ) | **TO F.R.C.P. 60 AND ORDER** |
| **SIERRA KINGS HEALTHCARE** ) | **GRANTING DEFENDANT'S** |
| **DISTRICT, et al.,** ) | **MOTION FOR SUMMARY** |
| ) | **JUDGMENT** |
| **Defendants.** ) | |
| ) | **Doc. #'s 111, 111-3 and 67** |

        In this action by plaintiff Robert Jablonsky, M.D. ("Plaintiff") for damages pursuant to 42

U.S.C. § 1983 against defendant Sierra Kings Health Care District ("Defendant"), the court

dismissed the action and ordered that judgment be entered in favor of Defendant on June 6, 2010.

The court's order dismissing the action was based primarily on the lack of any response by

Plaintiff to an order to show cause that was filed by the court on September 24, 2009.  Currently

before the court is Plaintiff's motion to set aside void judgment pursuant to Rule 60(b)(4) of the

Federal Rules of Civil Procedure.  Doc. # 111.  Also before the court is Plaintiff's response to the

court's order to show cause.  Doc. # 111-3.  For the reasons that follow the court's order

dismissing the action and order directing entry of judgment in favor of Defendants will remain in

effect.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

The factual background of this action has been set forth in some detail in prior decisions of this court and need not be repeated in detail here.  See Doc. #'s 11, 39 and 103.  Briefly, Plaintiff is a physician and surgeon whose privileges to practice at defendant Sierra Kings District Hospital were summarily revoked or suspended in September 1997.  Prior orders of the court have dismissed all state law claims that were previously adjudicated in state proceedings and have limited Plaintiff to a claim or claims arising from the procedural Due Process Clause of the Fourteenth Amendment.  In its Order on Defendant's Motion for Summary Judgment, filed on September 24, 2009, (the "September 24 Order") the court found that Plaintiff's action turned on the issue of whether the procedures that had been provided by Defendant at the time of, or immediately following the summary suspension/revocation of privileges, were constitutionally sufficient for purposes of Fourteenth Amendment due process.  The court found that the parties' failure to focus sufficiently on that issue prevented a final determination of Defendant's motion for summary judgment.   Specifically, the court observed:

> Unfortunately, the parties' nearly exclusive focus on the delay in the completion of the administrative process has resulted in pleadings that lack any allegation or discussion of the process [that] was provided to Plaintiff, either by design or by happenstance, at the time of or immediately after the summary suspension.  For purposes of the present discussion, the court will rely on its review of the information provided in Defendant's exhibits in support of its motion for summary judgment.  It appears that for purposes of this preliminary discussion that the information the court can glean from the documents provided is sufficient to allow the court to make fairly accurate presumption[s] about the process that was provided initially.  The court will leave it to the parties to dispute, modify or add to the factual basis of the motion for summary judgment or opposition thereto.

Doc. # 103 at 14:5-14.

The court's September 24 Order, after noting the absence of allegation or argument with regard to the procedures that were provided in the 30 days following the revocation/suspension of privileges, deduced what facts it could from the exhibits that were provided in support of Defendant's motion for summary judgment.  The court concluded:

> The materials noted above show that the administrative process available to Plaintiff within the first thirty days after summary suspension of Plaintiff's medical staff privileges offered Plaintiff notice and the opportunity to respond,

both in person and in writing, to both the general and specific charges against Plaintiff. In light of [ <u>Laudermill v. Cleveland Bd. Of Educ.</u>, 470 U.S. 532 (1985)], which held that basic notice and opportunity to respond meaningfully to charges is sufficient where more extensive post-deprivation procedures are provided and given the elements of formality that are not constitutionally mandated by the Due Process Clause of the Fourteenth Amendment as listed in [<u>Yashon v. Hunt</u>, 825 F.2d 1016 (6th Cir. 1987), the court finds that Plaintiff *may well* have been afforded the process that was due immediately post-deprivation.

Doc. # 103 at 16:8-16 (italics added).

The court's September 24 Order provisionally found that the facts available in the parties' pleadings at that time indicated that Plaintiff was probably provided constitutionally sufficient process immediately post-deprivation and that summary judgment was probably appropriate given the state of the facts. In the interest of a full opportunity for both parties to address the issue, the court offered Plaintiff an opportunity to further elaborate on the factual context in light of the court's tentative decision. The order was set forth in the form of an order to show cause that directed Plaintiff to either show that the pleading set forth in the First Amended Complaint was sufficient to state a claim for relief or to seek leave to amend. Any response to the court's September 24 Order was due not later than October 19, 2009.

On October 13, 2009, a notice was filed by Plaintiff concerning the initiation of bankruptcy proceedings by Defendant Sierra Kings. On October 21, 2009, a Notice of Filing of Bankruptcy was filed by Defendant Sierra-Kings. On June 7, 2010, the court issued an order dismissing the case with prejudice and ordered the entry of judgment in favor of Defendant. The clerk of the court entered judgment on the same day. The instant motion for relief from void judgment was filed on June 7, 2011.

**LEGAL STANDARDS**

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 157 (1970); <u>Poller v. Columbia Broadcast System</u>, 368 U.S. 464, 467 (1962); <u>Jung v. FMC Corp.</u>, 755 F.2d 708, 710 (9th Cir. 1985); <u>Loehr v. Ventura County Community College Dist.</u>, 743 F.2d 1310, 1313 (9th

3

Cir. 1984).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Although the party moving for summary judgment always has the initial responsibility of informing the court, the nature of the responsibility varies "depending on whether the legal issues are ones on which the movant or the non-movant would bear the burden of proof at trial."  Cecala v. Newman, 532 F.Supp.2d 1118, 1132-1133 (D. Ariz. 2007).  When the moving party has the burden of proof at trial, that party must carry its initial burden at summary judgment by presenting evidence affirmatively showing, for all essential elements of its case, that no reasonable jury could find for the non-moving party. United States v. Four Parcels of Real Property, 941 F.2d 1428, 1438 (11th Cir.1991) (en banc); Calderone v. United States, 799 F.2d 254, 259 (6th Cir. 1986); see also E.E.O.C. v. Union Independiente De La Autoridad De Acueductos Y Alcantarillados De Puerto Rico, 279 F.3d 49, 55 (1st Cir. 2002) (stating that if "party moving for summary judgment bears the burden of proof on an issue, he cannot prevail unless the evidence that he provides on that issue is conclusive.")

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); First Nat'l Bank of Arizona v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968); Ruffin v. County of Los Angeles, 607 F.2d 1276, 1280 (9th Cir. 1979).  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the mere allegations or denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  Rule 56(e); Matsushita, 475 U.S. at 586 n.11; First Nat'l Bank, 391 U.S. at 289; Strong v. France, 474 F.2d 747, 749 (9th Cir. 1973).  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S.

4

242, 248 (1986); <u>T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n</u>, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, <u>Anderson</u>, 477 U.S. 248-49; <u>Wool v. Tandem Computers, Inc.</u>, 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." <u>First Nat'l Bank</u>, 391 U.S. at 290; <u>T.W. Elec. Serv.</u>, 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" <u>Matsushita</u>, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments); <u>International Union of Bricklayers v. Martin Jaska, Inc.</u>, 752 F.2d 1401, 1405 (9th Cir. 1985).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Rule 56(c); <u>Poller</u>, 368 U.S. at 468; <u>SEC v. Seaboard Corp.</u>, 677 F.2d 1301, 1305-06 (9th Cir. 1982). The evidence of the opposing party is to be believed, <u>Anderson</u>, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, <u>Matsushita</u>, 475 U.S. at 587 (citing <u>United States v. Diebold, Inc.</u>, 369 U.S. 654, 655 (1962)(per curiam); <u>Abramson v. University of Hawaii</u>, 594 F.2d 202, 208 (9th Cir. 1979). Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. <u>Richards v. Nielsen Freight Lines</u>, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), <u>aff'd</u>, 810 F.2d 898, 902 (9th Cir. 1987).

## DISCUSSION

**I. Motion for Relief from Void Judgment**

Rule 60(b)(4) sets forth bases for relief from final judgment. Among the grounds for such relief is the situation in which judgment is void because the court lacked authority to enter

judgment at the time it did.  Plaintiff also contends that he was prevented from filing a response

to the order to show cause because such response was prohibited by the stay imposed

automatically pursuant to 11 U.S.C. § 362(d) upon Defendant's filing of bankruptcy on October

8, 2009.  Plaintiff alleges the bankruptcy stay was not lifted until February 20, 2011, and that the

court's entry of judgment in favor of Defendant during the period the stay was in force was void.

Plaintiff requests that the court relieve him of the judgment against him and accept the Document

at docket number 111-3 as Plaintiff's response to the court's order to show cause.

Defendant opposes Plaintiff's motion for relief primarily on the grounds of latches,

waiver and estoppel.  In addition, Defendant contends Plaintiff's motion is untimely in that the

motion for relief was filed more than four months after the bankruptcy court lifted the automatic

stay.

While the court tends to agree with Defendant that Plaintiff was dilatory in filing the

instant motion for relief, the court also agrees that this action has aged sufficiently and that the

time has arrived to bring the case to a close leaving the fewest issues in play should either party

wish to pursue appeal.  Because the court will, for the reasons discussed *infra*, determine that

there remain no material issue of fact to be resolved and that summary judgment is therefore

appropriate, the court will grant Plaintiff's motion for relief from void judgment and will proceed

to a determination of the viability of Plaintiff's claims against Defendant on the merits based on

Plaintiff's proposed response to the court's order to show cause.

**II. Plaintiff's Response to the Order to Show Cause and Defendant's Motion for Summary**

**Judgment**

The crux of Plaintiff's response to the court's order to show cause is the contention that

Plaintiff's position as a medical staff provider with patient care responsibilities entitled Plaintiff

to an evidentiary hearing immediately following the summary suspension/revocation of

privileges to determine the nature and duration of the emergent situation that gave rise to the

summary suspension.  Plaintiff contends that his First Amended Complaint ("FAC") adequately

sets forth both facts and legal contentions to support a claim of constitutional deprivation.

1    Plaintiff's argument recognizes that the constitutional dimensions of his Fourteenth

2    Amendment due process claim are defined and delimited by the Supreme Court's holding in

3    Laudermill v. Cleveland Bd. of Edu., 470 U.S. 532 (1985).  Plaintiff correctly notes that the

4    Laudermill court held:

5        We conclude that all the process that is due is provided by a pretermination
         opportunity to respond, coupled with post termination administrative procedures
6        as provided by the [State] statute.

7    Doc. # 111-3 at 3:14-16 (quoting Laudermill,470 U.S. 532 at 547).  Plaintiff also recognizes that

8    due process rights under the Fourteenth Amendment are not offended "where a State must act

9    quickly, or where it would be impractical to provide predeprivation process," provided post-

10   deprivation process is provided without undue delay.  Gilbert v. Homar, 520 U.S. 924, 930

11   (1997).  California Business And Professions Code § 809.5 defines the situations where

12   summary termination/suspension of professional privileges is warranted by providing that

13   summary suspension or restriction of privileges may be imposed "where the failure to take that

14   action may result in an imminent danger to the health of *any individual*.  Id. (italics added).  As

15   the court noted in its September 24 Order:

16       Under California case authority, the question of whether due process requires pre-
         deprivation notice and opportunity to be heard turns on whether the purpose of the
17       action is to avoid imminent danger to the health of any individual.  See Sahlolbei
         v. Providence Healthcare, Inc., 112 Cal.App.4th 1137, 1148-1149 (4 Dist. 2004)
18       (observing that the procedures set forth in Cal. Bus. & Prof. Code § 809.5 for
         summary suspension of medical staff privileges where the threat of patient harm is
19       imminent is the exception to the general rule set forth in sections 809.1 - 809.4
         that require pre-deprivation notice and hearing.)
20
21   Doc. # 103 at 10:19-25.

22       Plaintiff's response to the court's order to show cause consists primarily of an extended

23   argument that, in sum, asserts that the interests of the physician in providing continuous patient

24   care and the interests of the patients in being provided care by the physician of their choice

25   impose a due process requirement upon Defendants.  Plaintiff contends Defendant was required

26   to provide evidentiary proof of an imminent threat to patient well being immediately following

27   the imposition of the summary suspension/termination of privileges.  Plaintiff contends that a

28                                                    7

hospital imposing summary suspension/revocation of a physician's clinical privileges must meet

"an exceptionally high standard" of proof in order to not run afoul of the physician's Fourteenth

Amendment due process rights.  Plaintiff contends that such a high standard cannot be met by a

mere "meet and confer" session prior to suspension or revocation of staff privileges.  Further,

Plaintiff contends that the constitutional interests at stake require a speedy determination.  As

Plaintiff puts the issue:

> A simple determination of 'incompetence' by a majority vote of the medical staff
> cannot be constitutionally adequate to separate the physician from the patients
> until a hearing could be granted many weeks – if not months – later.  Professional
> competence, including professional courtesy, is the subject of considerable
> deliberation.  Imminent danger is not at all of that nature.  There must be some
> additional factor – beyond mere professional incompetence or discourtesy – to
> warrant taking an action that will clearly deprive the physician of his right to
> practice medicine in the hospital without giving him a full opportunity to prove
> his competence.  It is the proof of that additional factor – or the lack of proof
> thereof – that demands a hearing of some sort where the physician has the
> opportunity to challenge the allegation of "imminence" while it is still imminent
> and before the deprivation becomes irremediable.

Doc. # 111-3 at 10:4-14.

In analyzing Plaintiff's contention, the court begins by noting that the motivating factor in

Defendant's suspension/revocation of Plaintiff's hospital privileges was the abrasive and

disruptive nature of Plaintiff's behavior that lead to what Defendant characterizes as a breakdown

in communications between Plaintiff and the hospital's staff and other physicians.  In this regard,

the court notes that the idea of professional competence or incompetence is broad.  In the context

of patient care in the extraordinarily complex setting of a hospital, it is obvious that

"competence" is multi-dimensional.  It includes not only medical knowledge and skill, but also a

basic knowledge of the workings and needs of the institution and the ability to constructively

interact with other healthcare providers in an institutional setting.  Further, the court notes that,

contrary to Plaintiff's contention, there is no requirement that there be an imminent threat to the

physician's patient or patients or to any *identifiable* patient.  The court finds that the term "any

patient" as used in section 809.5 incorporates patients in the abstract as well as any identifiable

patient.  Thus, summary suspension would be warranted where a physician's behavior is

1  sufficiently disruptive as to potentially jeopardize the flow of care to any patient anywhere in the

2  hospital at any time.

3          Plaintiff's argument is notable for two features.  First, it is devoid of any reference to

4  legal authority other than cases already cited by the court for the propositions set forth by the

5  court in its September 24 Order.  Second, Plaintiff, lacking any legal authority for the

6  "exceptionally high standard" he is trying to assert, frames the facts of this case using the

7  concepts of "competence," "proof," "imminence" and the "identifiable patient."  While

8  Plaintiff's arguments are rhetorically well crafted, they are legally unconvincing.  While one

9  normally associates the term "competence" with care of identifiable patients and the

10  susceptibility of incompetence to proof, such is not the case here.  Fundamentally, Plaintiff was

11  determined by his peers to be rude and abrasive to the point of disruptiveness.  Absent some form

12  of cross-cultural misunderstanding, it can generally be said that a person is intolerably and

13  disruptively rude and abrasive when the persons on the receiving end of his communications

14  collectively determine that he is.  When the individuals who have been on the receiving end of

15  the individual's communications determine that the individual's rudeness and/or disruptive

16  behavior has reached a level that potentially compromises care of *any patient*, that conclusion is

17  generally not susceptible to argument to the contrary.

18          Significantly, Plaintiff asserts that "[t]he only 'option' offered to [Plaintiff] at the due

19  process' meeting was to admit the incompetence and apologize to the hospital staff for being

20  unkind to them."  Doc. # 111-3 at 6:6-8.  While Plaintiff brushes this meeting off as woefully

21  inadequate to "even scratch the service of the harm it potentially caused [Plaintiff] and his

22  patients," Doc. # 111-3 at 6:8-9, the court finds that what apparently transpired at the meeting

23  goes straight to the heart of the concern that Defendant had with Plaintiff.  Given the nature of

24  the conflict between Plaintiff and Defendant, the opportunity for Plaintiff to acknowledge the

25  inappropriate nature of his interactions with the medical staff and to resolve to improve was all

26  that Defendant could logically offer.  At that point Plaintiff had the choice to accept the offer to

27  improve his interactions with the medical staff, an offer he did not take, or to embark on a

28                                                        9

1  foreseeably long and logically questionable effort to prove that what others had found was

2  abusive and disruptive behavior was, in fact, not disruptive.

3      Plaintiff's claim for relief for infringement of his Fourteenth Amendment rights fails for

4  two reasons.  First, Plaintiff has not and cannot successfully argue under the facts of this case that

5  he was entitled to an evidentiary hearing to prove or disprove the imminence of harm to any

6  identifiable patient.  To the extent Plaintiff asserts prejudice to himself and to his patients from

7  Defendant's actions, that prejudice is contemplated by section 809.5.  Pursuant to Laudermill,

8  and section 809.5, a physician whose hospital staff privileges are summarily suspended or

9  revoked is entitled to notice and the opportunity to be heard directly after the summary action so

10 long as an evidentiary hearing is provided in due course.  Plaintiff has provided no legal authority

11 whatsoever for the proposition that a hospital imposing summary restrictions on physician

12 practice must meet some elevated standard of proof to show imminence or the lack thereof based

13 on danger to any identifiable patient.

14      Second, and perhaps more convincing, the due process requirements of the Fourteenth

15 Amendment are intended, *inter alia*, to safeguard against the erroneous deprivation of the

16 plaintiff's property interest in medical staff privileges.  See Mathews v. Eldridge, 424 U.S. 319,

17 334 (1976) (listing the factors that give rise to due process concerns in the employment setting).

18 What is not compensable under the Fourteenth Amendment is the remote potential that the

19 deprivation of the property interest could possibly have been erroneous.  Plaintiff has tried his

20 state law claims in prior actions in state court and has failed to prevail on any of them.  In other

21 words, Defendant has essentially vindicated its actions in summarily terminating or suspending

22 Plaintiff's medical staff privileges in state court.  It would be contrary to the purposes of

23 Fourteenth Amendment jurisprudence to provide reward for the mere potentiality that the

24 termination of privileges could have been imposed erroneously when state court proceedings

25 indicate that there was no error.

26      The court finds that there remains no issue of material fact as to Plaintiff's claims against

27 Defendant.  Summary judgment will therefore be granted in favor of Defendant.

28                                              10

THEREFORE, it is hereby ORDERED that:

1.      Plaintiff's motion for relief from void judgment pursuant to Rule 60(b)(4) of the Federal Rules of Civil Procedure is hereby GRANTED.  Judgment entered by this court on June 7, 2010, is hereby VACATED.

2.      The document submitted by Plaintiff at Document 111-3 is hereby accepted by the court as Plaintiff's response to the court's September 24 Order.

3.      Defendants Motion for summary Judgment filed on June 1, 2009, is hereby GRANTED. The Clerk of the Court shall RE-ENTER JUDGMENT in favor of Defendant.

4.      The Clerk of the Court shall CLOSE THE CASE.


IT IS SO ORDERED.

Dated:   __July 14, 2011__                            _____
                                                         CHIEF UNITED STATES DISTRICT JUDGE

11